**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MAINE**

```
*************************************
In re:                            )
    John Defilippi, Jr. and       )    Chapter 7
    Lori Defilippi,               )    Case No. 09-20622
        Debtors                   )
*************************************
    Ellen Epstein,                )
        Plaintiff                 )
v.                                )    Adv. Pro. No. 09-2039
    John Defilippi, Jr. and       )
    Lori Defilippi,               )
        Defendants                )
*************************************
```

**Memorandum of Decision**

**I.  Introduction**

The plaintiff, Ellen Epstein, seeks a determination that $4,333 owed her by the debtors, John and Lori Defilippi, is excepted from discharge as a "domestic support obligation" under §§ 101(14A) and 523(a)(5) of the Bankruptcy Code.[1]  Because her claim is owed for services rendered as a guardian ad litem in state court, because such obligations are considered amounts owed for the support of a child, and because the Defilippis constitute "parents" of their grandson for purposes of this dischargeability determination, I conclude that the debt is excepted from the Defilippis' chapter 7 discharge.

---

[1] Unless otherwise indicated, citations to statutory sections and to chapter numbers refer to those within the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. §§ 101, et seq. ("Bankruptcy Code" or "Code").

## II.  Procedure

### A. Posture

Epstein has moved for judgment as a matter of law.  See Fed.R.Civ.P. 50(a).[2]  However, a motion for judgment as a matter of law is properly made after a party has been fully heard at trial.  Id.  Epstein's motion is more properly treated as one for summary judgment.  See Fed.R.Civ.P. 56.[3]  The defendants consent to such treatment.

### B. Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Id.  I must scrutinize the legal merit of a summary judgment request to ensure that the relief requested is warranted on the undisputed facts.  Chase Manhattan Bank USA, N.A. v. Poor (In re Poor), 219 B.R. 332, 334 (Bankr. D. Me. 1998), citing, *inter alia*, Ramsdell v. Bowles, 64 F.3d 5, 8 (1st Cir. 1995) ("summary judgment is appropriate only if the record before the court establishes that the moving party is entitled to judgment as a matter of law.").

---

[2]  Made applicable to this proceeding by Fed.R.Bankr.P. 9015.

[3]  Made applicable to this proceeding by Fed.R.Bankr.P. 7056.

### III. Facts

The Defilippis are paternal grandparents of a minor child, "Joe."[4]  Together, before their bankruptcy, they initiated proceedings in Maine District Court against Joe's maternal grandmother ("Ms. LeBlanc") and her then domestic partner, seeking modification of parental rights for Joe.  The basis for their action and the status of Joe's biological parents are beside the point.  What is important is the result:  The state court issued judgment on January 2, 2009, establishing "parallel" parental rights and responsibilities for Joe to and among the Defilippis, Ms. LeBlanc, and her partner.[5]

Epstein acted as guardian ad litem ("GAL") for Joe in that proceeding, and was awarded a $4,333 judgment against the Defilippis in compensation for her services.  The judgment remains unpaid.  The Defilippis do not challenge its validity, its amount, or their liability.  Rather, they assert that their obligation to pay it must succumb to their chapter 7 discharge.

### IV. Analysis

Section 523 lists the types of debts that are excepted from a debtor's chapter 7 discharge.  Among these exceptions is a

---

[4]  "Joe" will be employed as a pseudonym for the minor child throughout this memorandum.

[5]  A 2006 judgment, which was the subject of their efforts for modification, declared the Defilippis and Ms. LeBlanc to be "de facto" parents of Joe.  That earlier judgment is not part of the record, though the Defilippis admit its substance.

3

"debt for a domestic support obligation." 11 U.S.C. § 523(a)(5).[6] A domestic support obligation, in turn, is defined as a debt:

> (A) owed to or recoverable by—
> (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or
> (ii) a governmental unit;
> (B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;
> (C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of—
> (i) a separation agreement, divorce decree, or property settlement agreement;
> (ii) an order of a court of record; or
> (iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and

---

[6] The parties both refer in their papers to a previous version of § 523(a)(5), which read in relevant part:

> A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt . . . to a spouse, former spouse or child of the debtor for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record . . . .

This provision was revised, effective for all cases filed on or after Oct. 17, 2005, by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23 § 215 (Apr. 20, 2005) ("BAPCPA"). The 2005 amendments did not effect a substantive change to the pertinent definition and discharge exception.

4

>     (D) not assigned to a nongovernmental entity,
>     unless that obligation is assigned voluntarily by
>     the spouse, former spouse, child of the debtor, or
>     such child's parent, legal guardian, or
>     responsible relative for the purpose of collecting
>     the debt.

11 U.S.C. § 101(14A).

"In order to be excepted from discharge, then, the debt must meet all three prongs of the 523(a)(5) test, namely that it was (1) 'to a . . . child of the debtor;' (2) incurred for the 'support' of the child; and (3) 'in connection with' an 'order of a court of record.'" Spear v. Constantine (In re Constantine), 183 B.R. 335, 336 (Bankr. D. Mass. 1995).[7] The only issue in dispute is whether Joe constitutes a "child of the debtor[s]."[8]

---

   [7] With the changes wrought by BAPCPA, see note 6, supra, the analysis is now effectively governed by § 101(14A) and contains a fourth prong (requiring that the obligation in question not have been assigned to a non-governmental entity, see 11 U.S.C. § 101(14A)(D)), which prong is not at issue in this proceeding.

   [8] The general rule under § 523(a)(5) is that a "debt owed to a third party is considered owed to the child if it is for the child's support." Uriarte, 215 B.R. at 673 (collecting cases, including Heintz v. Temblay (In re Tremblay), 162 B.R. 60, 62 (Bankr. D. Me. 1993)). The state court expressly held that the GAL fees which are the subject of this adversary proceeding "are in the nature of child support and are non dischargeable in bankruptcy and may be enforced by any means provided by law." This prospective determination of nondischargeability is not conclusive in itself. See In re Smith, 398 B.R. 715, 721 n.3 (1st Cir. B.A.P. 2008) ("The definition of domestic support obligation in § 101(14A), by adding 'without regard to whether such debt is expressly so designated' validates judicial decisions under former § 523(a)(5) which hold that labels do not control the actual nature of the designation."). However, the Defilippis do not dispute that Epstein's claim was incurred for

5

The Defilippis contend that since they are Joe's biological grandparents, he cannot be their "child" and, therefore, Epstein's claim is subject to discharge. See, e.g., In re Look, 383 B.R. 210 (Bankr. D. Me. 2008) (Congress intends the ordinary meaning of words used in a statute). They would have the court look exclusively at biological relationships. See, e.g., Eliason v. Sullivan (In re Sullivan), 234 B.R. 244 (Bankr. D. Conn. 1999), and Ceconi v. Uriarte (In re Uriarte), 215 B.R. 669 (Bankr. D. N.J. 1997) (both finding debts owed by grandparents for support of their grandchildren to be dischargeable, emphasizing the plain meaning of "child of the debtor").

Though a biological parent/child relationship may be sufficient to bring a support debt within § 523(a)(5)'s purview, it is not a necessary condition to its operation. Here, a state court judgment provided that the "parental rights and responsibilities of [Joe's biological parents] *are not terminated but are allocated to the de facto parents*"[9] (emphasis added), who were, at the time, the Defilippis, Ms. LeBlanc, and her partner.

---

Joe's support, or that it thus constitutes a debt "owed to the child" for purposes of § 523(a)(5).

[9] Although the Defilippis attempt to make something of the state court's use of the term "de facto parent" because, rather then define that term the statute refers only to "third parties," the case law makes it clear that determination of a third party's status as de facto parent provides the court with jurisdiction to determine the third party's parental rights regarding a child. See Stitham v. Henderson, 768 A.2d 598, 603 n.6 (Me. 2001).

6

The proceeding that resulted in that judgment was not brought under Maine's Grandparents Visitation Act, 19-A M.R.S. §§ 1801-1805 (2005) (authorizing grandparents to petition for visitation rights under certain conditions), but was a petition brought under 19-A M.R.S. § 1653 seeking a declaration establishing that the Defilippis had *parental* rights and *responsibilities* for Joe.

> [W]hen an individual's status as a de facto parent is not disputed and has been so determined by a court properly exercising jurisdiction in a declaratory judgment action pursuant to Title 19-A, the court may consider an award of parental rights and responsibilities to that individual *as a parent* pursuant to section 1653(2)(D), based upon a determination of the child's best interest pursuant to section 1653(3).

C.E.W. v. D.E.W., 845 A.2d 1146, 1151 (Me. 2004) (emphasis added).

> A parental rights order, pursuant to 19-A M.R.S.A. § 1953(2), is the appropriate means of establishing parental rights and responsibilities. A parental rights order specifies the parties' rights and responsibilities, such as the frequency and duration of contact, child support, and access to the child's records.

Leonard v. Boardman, 854 A.2d 869, 874 (Me. 2004). Thus, Maine law envisions that parties who are not a child's biological parents may assume the rights and responsibilities of parenthood. The state court judgment had exactly that effect.

7

Though the state court never terminated the parental rights and responsibilities of Joe's biological parents, it unequivocally allocated those rights and responsibilities to the Defilippis.  Those rights and responsibilities included: rights to be informed about and participate in decisions regarding Joe's care, to travel with Joe outside the country, to have Joe share their residence on alternating weeks, to have telephone contact with Joe when he was not at their home, to alternate holidays with Joe, and to claim Joe as a dependent for tax purposes in alternating years; as well as the responsibilities to participate in therapy with Joe, to improve communication with the other parents, to share the GAL's fees, and to maintain health and dental insurance for Joe.  The state court went so far as to provide that Joe's biological parents were only entitled to contact with Joe in the discretion of the Defilippis and Ms. LeBlanc, in consultation with Joe's therapist.

The state court posited rights and responsibilities of such breadth and depth in the Defilippis as to render the authorities upon which they rely easily distinguishable.  In Uriarte, the defendant/debtor was the grandfather and guardian of the children for whose support he was indebted to the plaintiff.  215 B.R. 669.  In determining that the debt was dischargeable, the New Jersey bankruptcy court stated:

8

> The responsibilities of a guardian differ from
> those of a parent in one crucial way. A guardian
> has the power and responsibilities of a parent who
> has not been deprived of custody of his minor and
> unemancipated child, *except that a guardian is not
> legally obligated to provide for the ward from his
> own funds* . . . . If [the defendant] is not
> legally obligated to support the children, the
> obligation to pay their guardian ad litem is not
> an obligation for their support under section
> 523(a)(5).

Id. at 673 (emphasis in original, citations omitted).

Similarly, Sullivan featured a defendant/debtor who was the grandmother of two children. 234 B.R. 244. Although it was not clear whether the defendant had been granted legal guardianship or simply custody of the children, the distinction was irrelevant:

> [i]nasmuch as [Connecticut] state law imposes no
> financial obligation on the debtor for the support
> of the children [even if she were the legal
> guardian], the court concludes that the fees to
> the guardian ad litem, although imposed on the
> debtor by order of the probate court, are not in
> the nature of "support."

Id. at 247.

Here, the state court did not name the Defilippis simply as Joe's guardians. The court's power to assign parental rights and responsibilities under 19-A M.R.S. § 1653 is "independent of and not preempted by the court's related but discrete authority pursuant to the Uniform Act on Paternity . . . ; the adoption provisions of the Maine Probate Code . . . ; or the child

9

guardianship provisions of the Maine Probate Code . . . ." C.E.W. v. D.E.W., 845 A.2d at 1151. The state court judgment established the Defilippis as Joe's parents *de jure*.

As far as the State of Maine and the Bankruptcy Code are concerned, the Defilippis are Joe's parents and he is their child. The debt owed to the plaintiff is therefore excepted from discharge pursuant to § 523(a)(5).

### V. Conclusion

For these reasons, Epstein's claim against the Defilippis is excepted from discharge.

Dated: June 3, 2010

/s/ James B. Haines, Jr.
_____
Hon. James B. Haines, Jr.
U.S. Bankruptcy Judge

10